UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CURTIS HAMILTON**  CASE NO.: 2:12-cv-01398
**AND ROSA HAMILTON**

versus  JUDGE _____

**OCHSNER HEALTH SYSTEMS, INC.**
**D/B/A OCHSNER MEDICAL CENTER**
**AND OCHSNER CLINIC FOUNDATION**  MAGISTRATE _____

* * * * * * * * * * * * * *

## COMPLAINT IN MALPRACTICE

Curtis Hamilton and Rosa Hamilton, both individuals of the full age of majority and residing in the State of Mississippi, bring this claim against Ochsner Health Systems, Inc. d/b/a Ochsner Medical Center and Ochsner Clinic Foundation (hereinafter referred to as Ochsner), a domestic corporation domiciled in the Parish of Orleans, State of Louisiana, who respectfully represents the following, to wit:

1.

Pursuant to the provisions of 28 U.S.C. § 1332, this court is vested with jurisdiction as there is complete diversity between the parties and the amount in dispute exceeds $75,000.00.

2.

Made defendant herein is Ochsner, a qualified health care provider within the meaning of La. R.S. 40:1299.41, *et. seq*. The claims asserted in this complaint have already been submitted through the procedures for medical malpractice claims and this suit is ripe.

3.

Curtis Hamilton was under the care of the staff of Ochsner following a liver transplant and had been recuperating at its facility located in New Orleans at 1514 Jefferson Highway, New Orleans, Louisiana 70121.

4.

On or about July 18, 2009, Mr. Hamilton had been left in a recliner for between seven to eight hours.  On this date, when it was time for Mr. Hamilton to alight from his recliner, approximately five to six employees of Ochsner used sheets to lift Mr. Hamilton to his bed. The manner in which this lift was done under the circumstances was not proper under the applicable standards of care.  Further, the Ochsner policies would have required that the transfer be performed in a different manner.

5.

During the process of moving Mr. Hamilton to his bed, he heard and felt something in his back pop. He immediately reported this to the Ochsner employees, but they did not correct the manner in which Mr. Hamilton was being moved nor did they report or have Mr. Hamilton's complaints evaluated. Mr. Hamilton further reported additional back pain which was no reported or properly evaluated.

6.

Ochsner claims that prior to this move there was already a documented incident where a popping sound had come from Mr. Hamilton's back and/or that he has been dropped by

emergency transport personnel. None of these claims were reported to Mr. Hamilton's treating physicians nor properly evaluated or treated by Ochsner.

7.

Despite the claimed incident set forth in the preceding paragraph, the evidence establishes that Mr. Hamilton was still ambulatory and weight bearing prior to the move from the chair to the bed.

8.

Following the lift alleged in paragraphs 4-5, Mr. Hamilton's symptoms continued and worsened over weekend and an MRI was performed which showed that Mr. Hamilton had suffered an acute fracture of the spine and that the fracture was causing a compressed spinal cord. Despite emergency surgical intervention, Mr. Hamilton has been left paralyzed from the waist down.

9.

The conduct of Ochsner, acting through its employees and agents for which it is legally responsible, fell below the standard of care both through the vicarious liability for the employees involved in the lift and others in the following nonexclusive particulars:

- a) Using an improper method of moving Mr. Hamilton from the chair to his bed;
- b) Failing to properly care for Mr. Hamilton during the time of his recuperation from the liver transplant;
- c) Failing to timely and properly report the alleged incident and/or prior popping sound or drop by emergency transport personnel so that appropriate intervention could have been provided and/or appropriate orders given;

d) Failing to advise Mr. Hamilton of the failures present at the time of his injury so that he might seek other or additional medical treatment;

e) Failing to timely and properly respond to the complications resulting from the manner in which Mr. Hamilton was being moved to his bed and/or by what Ochsner claims to have been a prior popping sound in his back and/or a drop by emergency transport personnel;

f) Allowing Mr. Hamilton to undergo additional pain, suffering and expenses as a result of the manner in which he was transported to his bed by employees of Ochsner;

g) Failing to provide adequate equipment and training for the proper performance of the movement of patients, including Mr. Hamilton;

h) Failing to disseminate and consider relevant medical information of which they were aware or should have been aware that might affect the manner in which Mr. Hamilton was treated and/or whether his treating physicians were contacted for additional instruction;

i) Failing to respond to signs of spinal cord injury and/or other injuries in Mr. Hamilton that tended to get progressively worse or lead to further injury with the passage of time;

j) Failing to properly respond to the information which they knew or should have known, including the popping sound in Mr. Hamilton's back;

k) Failing to comply with proper lifting techniques as required under the circumstances and/or Ochsner policies;

l) Failing to timely and properly respond to signs of spinal cord injury and/or other injuries that tended to get progressively worse or lead to further injury with the passage of time; and

m) Other acts of negligence and fault to be proven at the trial of this matter.

10.

Ochsner was independently negligent for the following:

a) Failing to properly train it staff relative to the proper lifting techniques for patients such as Curtis Hamilton;

b) Failing to establish, promulgate and/or enforce regulations, standards, or policies relative to the lifting of patients such as Curtis Hamilton;

c) Failing, to the extent Ochsner had established, promulgated and/or enforced proper standards, regulations, or policies relative to the lifting of patients such as Curtis Hamilton, to properly train its staff relative to those standards, regulations, or policies;

d) Failing to require its staff to comply with standards, regulations, or policies relative to the lifting of patients such as Curtis Hamilton;

e) Failing to establish, promulgate and/or enforce regulations, standards, or policies relative to the dissemination and consideration of relevant medical information in its possession that might affect the manner in which patients were treated and/or whether the patients' treating physicians were contacted for additional instruction;

f) Failing, to the extent Ochsner had established, promulgated and/or enforced proper standards, regulations, or policies relative to the dissemination and consideration of relevant medical information in its possession that might affect the manner in which patients were treated and/or whether the patients' treating physicians were contacted for additional instruction, to properly train its staff relative to those standards, regulations, or policies;

g) Failing to require its staff to comply with standards, regulations, or policies relative to the dissemination and consideration of relevant medical information in its possession that might affect the manner in which patients were treated and/or whether the patients' treating physicians were contacted for additional instruction;

h) Failing to establish, promulgate and/or enforce regulations, standards, or policies relative to how the staff should respond to signs of spinal cord injury and/or other injuries that tended to get progressively worse or lead to further injury with the passage of time;

i) Failing, to the extent Ochsner had established, promulgated and/or enforced proper standards, regulations, or policies relative to how the staff should respond to signs of spinal cord injury and/or other injuries that tended to get progressively worse or lead to further injury with the passage of time, to properly train its staff relative to those standards, regulations, or policies;

j) Failing to require its staff to comply with standards, regulations, or policies relative to how the staff should respond to signs of spinal cord injury and/or other injuries that tended to get progressively worse or lead to further injury with the passage of time;

k) Failing to establish, promulgate and/or enforce regulations, standards, or policies relative to properly responding to the information which its staff was aware or should have been aware, including any pre-existing conditions Mr. Hamilton had and the popping sound in Mr. Hamilton's back;

l) Failing, to the extent Ochsner had established, promulgated and/or enforced proper standards, regulations, or policies relative to properly responding to the information of which its staff was aware or should have been aware, including any pre-existing conditions Mr. Hamilton had and the popping sound in Mr. Hamilton's back, to properly train its staff relative to those standards, regulations, or policies;

m) Failing to require its staff to comply with standards, regulations, or policies relative to properly responding to the information of which its staff was aware or should have been aware, including any pre-existing conditions Mr. Hamilton had and the popping sound in Mr. Hamilton's back; and

n) Other acts of negligence and fault to be proven at the trial of this matter.

11.

At the time of the injuries, Mr. Hamilton was in the exclusive control of Ochsner and the injuries occurred under circumstances where they would not have occurred except for negligence. As such, the doctrine of *res ipsa loquitur* is applicable to these facts.

12.

As a direct and proximate result of the negligence of Ochsner and its employees and/or agents, which is implicit in above described incident, Mr. Hamilton has suffered damages, including the expenditure of unnecessary medical expenses and costs, other life care expenses, lost earnings, income and earnings capacity, general damages which include

but are not limited to physical pain and suffering, mental pain and anguish, extreme emotional distress, loss of enjoyment of life, and other injuries and damages to be proven at trial of this matter.

13.

Rosa Hamilton, the wife of Curtis Hamilton, has also suffered injuries including the loss of support, love, consortium and affection of her husband and suffered other damages.

14.

Rosa Hamilton, who was present at the time of the wrongful acts of the defendants and immediately thereafter and who viewed the traumatic incident, has sustained severe and debilitating emotional distress under the circumstances alleged above when the defendants should have reasonably expected serious mental anguish or emotional distress to result. Accordingly, she has a claim pursuant to Louisiana Civil Code article 2315.6.

**WHEREFORE**, plaintiffs pray that after due proceedings there be finding that Ochsner violated the applicable standard of care in the care and treatment of Curtis Hamilton, thereby causing injury to him and Rosa Hamilton, and that thereafter there be judgment in favor of Curtis Hamilton and Rosa Hamilton and against the defendants for all sums reasonable and just under the premises, together with legal interest thereon from date of the request for a medical review panel until paid, as well as the costs of these proceedings, including the fees of expert witnesses.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys And Counselors At Law
7908 Wrenwood Blvd.
Baton Rouge, Louisiana 70809
(225) 932-9221; (225) 932-9286 (fax)

*/s/ Eulis Simien, Jr.*　　　　　　　　　　
By:　　Eulis Simien, Jr., Bar # 12077 (T.A.)
　　　　Jimmy Simien Bar, # 1598
　　　　Mark W. Simien, Bar # 23303